COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Fitzpatrick and Annunziata
Argued at Salem, Virginia


WILLIAM HENRY TANGER, III
                                    MEMORANDUM OPINION[*] BY
v.        Record No. 3168-96-3    CHIEF JUDGE NORMAN K. MOON
                                          JULY 8, 1997
FLAVIA DIAZ de TANGER

              FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                    Robert P. Doherty, Jr., Judge

              Terry N. Grimes (King, Fulghum, Snead, Nixon &
              Grimes, P.C., on briefs), for appellant.

              David A. Furrow for appellee.



     William Henry Tanger, III ("husband"), appeals the trial

court's order modifying spousal support.  Husband asserts that

the trial court erred in: (1) finding that the parties' material

change in circumstances warranted an increase in husband's

spousal support payments; (2) admitting into evidence a statement

prepared by Flavia Diaz de Tanger ("wife") estimating her cost of

living expenses at the standard of living she enjoyed at the time

of the parties' divorce; (3) considering in its determination of

spousal support wife's decision to care for her adult daughter

who was injured in an accident; and (4) denying husband's motion

for relief pursuant to Rule 4:12 and proceeding with an

evidentiary hearing.  In response, wife makes the additional

assertion that the trial court erred in failing to order that her

--------------------------------------

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

award of spousal support be made retroactive to January 31, 1994.

We hold that: (1) the record supports the trial court's finding that the material change in the parties' circumstances warranted an increase in spousal support in the amount of $700; (2) that the trial court properly considered wife's evidence of her standard of living at the time of her divorce; (3) the trial court properly considered wife's voluntary unemployment in determining support; (4) the court did not abuse its discretion in denying husband's motion for relief; and (5) the court did not abuse its discretion in ordering support retroactive to August 19, 1996.

Husband and wife were divorced in 1981. On July 18, 1990, after a series of spousal support orders, husband was ordered to pay wife $500 in monthly spousal support. On May 14, 1992, subsequent to an ore tenus hearing on husband's motion to modify support, the circuit court found that wife was voluntarily underemployed and imputed income to her in the amount of $2,800 per month. Accordingly, the trial court reduced husband's monthly spousal support obligation to zero.

On January 31, 1994, wife petitioned for an increase in spousal support. The trial court conducted an ore tenus hearing on January 10, 1995 to determine if a material change in circumstances, warranting a modification of support, had occurred. Wife, who was forty-eight at the time of the hearing, presented evidence that since 1992, she had filed for bankruptcy

and received a discharge of the majority of her debt. However, the lender of her student loan of $6,032.63 had demanded immediate repayment. Wife also stated that she had been unable to afford living by herself and consequently, had moved in with her daughter in August, 1994. Wife's monthly expenses were $2,802 in 1991 and had increased to $2,855 in 1995. The record also reflected that despite possessing a B.S. degree in Art History and Spanish Literature from Hollins College, which she received in 1989, wife was unable to find full-time employment in Roanoke, Northern Virginia, or other locations.

The trial court concluded that no material change in circumstances had occurred and therefore denied wife's request for modified support. Wife appealed, and we reversed holding that the evidence proved a material change in circumstances had occurred. Accordingly, we remanded for determination by the trial court of whether the material change warranted modification of support. On October 21, 1996, the trial court conducted an ore tenus hearing to consider the matter as remanded.

The record established that wife lived with her daughter in an apartment within a lake house owned by William Pringle. Wife had no lease and paid no rent or utilities. Pringle testified that wife and her daughter moved into the apartment in October, 1995 and were living in the apartment on a temporary basis. Pringle agreed to allow wife and her daughter to reside in the apartment, which he typically rented for $400, until their departure for Connecticut where they planned to live. They

eventually moved to Connecticut, but were there only a short time before wife's daughter was involved in a serious accident which rendered her unable to work for an extended period of time. Consequently, wife and her daughter returned to Pringle's home. Pringle further testified that since returning, wife and her daughter had discussed moving to California. Wife also stated that in exchange for doing errands and secretarial work for Pringle, he paid her health insurance premium of $216 a month. Pringle also permitted wife to use his credit card for various purchases. Pringle also provided wife with the use of one of his automobiles.

The record established that since 1992 wife had not obtained full-time employment. Wife testified that in 1995 she earned $2,915 from her translation work, and $4,763.45 in total income. Wife did not produce any letters or documentation of her efforts to find employment, however, she testified that she had made telephone or in person inquiries, including calls to contacts in Mexico about the possibility of establishing an import\export business. Wife testified that she had not been seeking employment recently because she had remained at home in order to care for her daughter. Wife explained that since her daughter's accident, she and her daughter had been living off a $10,000 insurance payment the daughter received for her accident and that they received food sent to them from relatives in Mexico.

With regard to her monthly expenses, wife indicated that she had expenses for transportation, food and clothing. Wife did not

specify the amounts of these expenses.  She produced an expense sheet indicating estimated monthly living expenses of $4,060, were she to resume living in the fashion she had enjoyed while married.  Wife's figures included her estimate to lease a residence, based on her inquiry regarding current rental rates.

Husband presented evidence that his partnership, Imaging Advertising, had been experiencing difficulty and had operated at a loss through August, 1996.  Husband testified that the partnership lost several large clients in 1996 and that he anticipated that the partnership would continue to lose clients in 1997.  Between 1992 and 1996 the company reduced staff significantly, decreasing from thirteen or fourteen employees in 1992 to five employees in 1996.  William Houck, Jr., a former advertising agency owner, testified about the problems besetting the advertising industry and stated that after his own advertising company failed after sixteen years, it took him two years to find a new position working in billboard advertising on commission.

Husband also indicated that he owned interests in two real estate partnerships: Et Cetera Associates and Ad Hoc Associates.  Husband owned approximately fifty percent of Et Cetera Associates which owned two pieces of realty including one with a lot assessed at $6,500 and a building assessed at $95,500, and another with land valued at $40,000 and a building valued at $83,000.  Husband stated that he was also a sixty percent owner of Ad Hoc Associates which owned the land and building occupied

by Image Advertising, assessed at $39,500 and $98,000, respectively.

Husband presented a financial statement disclosing a net worth of $314,000. Wife contends that based on husband's tax returns and other financial information, his net worth was actually $381,986. Husband earned $55,627 in 1992, $61,671 in 1994, and $45,428 in 1995. Husband anticipated earning approximately $40,000 in 1996. Husband reported living expenses of $2,325 in March, 1992, and living expenses of $3,739 for October, 1996. Of these expenses, $50 a month was for recreation, $300 a month for vacation and trips, $150 for charitable gifts, $150 for lessons and sports, $50 for gifts, $50 for the parties' daughter, and $100 for his girlfriend's children.

Based on this evidence, the trial court found that the material change in circumstances warranted a modification of spousal support. The trial court increased husband's monthly spousal support obligation from zero to $700 a month.

### Modification of Support

"The moving party in a petition for modification of support is required to prove both a material change in circumstances and that this change warrants a modification of support." Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989). "`Changed circumstances' must bear upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay." Hollowell v. Hollowell, 6 Va. App. 417, 419, 369

S.E.2d 451, 452 (1988). Having previously determined that a material change in circumstances occurred, here we consider only whether the trial court erred in finding that the material change warranted a modification of spousal support.

"We will not disturb the trial court's decision where it is based on an ore tenus hearing unless it is `plainly wrong or without evidence in the record to support it.'" Furr v. Furr, 13 Va. App. 479, 481, 413 S.E.2d 72, 73 (1992) (quoting Schoenwetter, 8 Va. App. at 605, 383 S.E.2d at 30). Decisions regarding spousal support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence. Konefal v. Konefal, 18 Va. App. 612, 614, 446 S.E.2d 153, 154 (1994) (citation omitted). Further, "[i]n determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

In light of the record, we cannot say that the trial court abused its discretion in increasing husband's spousal support obligation to $700 a month. Wife presented credible evidence that she had sought employment until her daughter's accident and that she had been unsuccessful in obtaining a position. Wife's part-time employment as a translator was insufficient to meet wife's monthly expenses. Similarly, while wife might have also taken a full-time entry level position in the Roanoke area, such

a position would not have provided her with income sufficient to meet her monthly expenses. Accordingly, the trial court, while finding that wife was voluntarily unemployed, did not err in imputing only that amount of income the evidence established was available to her based on her qualifications and the availability of employment for a person so qualified. Consequently, we hold that the trial court did not abuse its discretion in modifying spousal support in order to provide wife with the additional income necessary to meet the shortfall between her imputed income and her monthly expenses. We further hold that the trial court did not abuse its discretion in finding that a monthly support obligation of $700 was within husband's means. The record established that husband's monthly expenditures on gifts, vacations, sports, and lessons, alone, exceeded the amount of the support ordered.

Husband's objection to the trial court's consideration of the monthly expenses wife estimated she would have were she to maintain the standard of living she experienced while married, is also without merit. "It is well established that spouses `entitled to support have the right to be maintained in the manner to which they were accustomed during the marriage,' subject to the other spouse's ability to pay." Furr, 13 Va. App. at 483, 413 S.E.2d at 75 (quoting Dukelow v. Dukelow, 2 Va. App. 21, 26, 341 S.E.2d 208, 210 (1986)). Accordingly, whether considering an original award of support, or a modification of that award, evidence of the parties' standard of living at the

time of their divorce is properly admissible for the trial court's consideration in determining spousal support.  See Furr, 13 Va. App. at 483-84, 413 S.E.2d at 75.

## Motion for Relief

Husband alleges that during discovery, he "attempted to discover the true nature and extent of [wife's] income and expenses," but that wife refused to provide him with the requested information.  Consequently, husband filed a motion in limine/motion for relief pursuant to Rule 4:12.  The trial court denied the motion and proceeded with an evidentiary hearing.

> "Rule 4:12 gives the trial court broad discretion in determining what sanctions, if any, will be imposed upon a litigant who fails to respond timely to discovery." Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990).  And a trial court's decision to admit evidence that is not timely disclosed, rather than impose the sanction of excluding it, will not be reversed unless the court's action amounts to an abuse of discretion.  First Charter v. Middle Atlantic, 218 Va. 304, 308-09, 237 S.E.2d 145, 147-48 (1977).

Rappold v. Indiana Lumbermens Mutual Ins., 246 Va. 10, 14, 431 S.E.2d 302, 305 (1993).

Here, the record establishes that wife responded to husband's discovery requests, albeit perhaps in a manner that husband regarded as insufficient.  However, the record also establishes that husband had the opportunity to conduct and to access a substantial amount of discovery generated by the prior proceedings in this matter.  The trial court observed this in denying husband's motion, noting that "the reason I overrule your

- 9 -

motion is because there has been a tremendous amount of discovery in this case.  And [wife] was on the witness stand to testify, and I realize you might have had some greater advantage if you'd had this information, but I think you had an opportunity to get it out on cross-examination."  In light of this evidence, we hold that the trial court did not abuse its discretion in denying husband's motion and in proceeding with an evidentiary hearing.

### Period of Support

This case was reinstated to the docket by order entered January 31, 1994.  In ordering modification of spousal support, the trial court ordered support retroactive to August 19, 1996,[1] and fixed the amount of arrearage as of November 1, 1996, at $1,671.  Wife asserts that the trial court erred in failing to make the award of spousal support retroactive to January 31, 1994.

Code § 20-112 provides that "[n]o support order may be retroactively modified, but may be modified with respect to any period during which there is a pending petition for modification, but only from the date that notice of such petition has been given to the responding party."  "Whether to make modification of a support order effective during a period when a petition is pending is entirely within the discretion of the trial court."

---

[1]Subsequent to our remand of this matter for determination of whether the material change in the parties' circumstances warranted modification of support, the trial court originally set the matter for hearing on August 19, 1996.  Husband sought and was granted a continuance.

O'Brien v. Rose, 14 Va. App. 960, 965, 420 S.E.2d 246, 249 (1992). Finding no evidence that the trial court abused its discretion in ordering support retroactive to August 19, 1996, we affirm.

Holding that the trial court did not err in finding that the material change in the parties' circumstances warranted an increase in spousal support and that the evidence supported an award of support in the amount of $700 a month, retroactive to August 19, 1996, we affirm.

Affirmed.